# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Apr 09, 2021
s/ DarylOlszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )

Devices A, B, C, D which are currently located at the MPD )
Property Bureau, 2620 W. Wisconsin Ave, Milwaukee, WI, )
53233; as more fully described in Attachment A )

Case No.    21    MJ    85

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

❏ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1)(A) and 18 U.S.C. 924(c)(1)(A)(i) | See attached affidavit |

The application is based on these facts:

See attached affidavit

❏ Continued on the attached sheet.

❏ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

RICHARD CONNORS    Digitally signed by RICHARD CONNORS
Date: 2021.04.09 14:00:44 -05'00'

*Applicant's signature*

ATF SA Richard Connors

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone/email _____ *(specify reliable electronic means)*.

Date: _____ April 9, 2021 _____

*Judge's signature*

City and state:    Milwaukee, WI.

Honorable William E. Duffin

*Printed name and title*

<u>**AFFIDAVIT IN SUPPORT OF AN**</u>
<u>**APPLICATION FOR A SEARCH WARRANT**</u>

I, Richard Connors, being first duly sworn, hereby depose and state as follows:

<u>**INTRODUCTION AND AGENT BACKGROUND**</u>

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am employed as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) assigned to the Milwaukee Field Office since October of 2015. I have been employed as a full time law enforcement officer for over 5 years. I have received training at the Federal Law Enforcement Training Center in Glynco, GA. I attended the Criminal Investigator Training Program, as well as ATF's Special Agent Training Program. I have received training in the investigation of unlawful possession of firearms, the unlawful transfer of firearms, and the unlawful dealing in firearms without a dealers' license. Prior to becoming a Special Agent with the ATF, I received two (2) bachelor's degrees from Northern Illinois University in the fields of Sociology and International Relations. I have received a master's degree from Northern Illinois University in the field of American Government.

3.	I have received training in the investigation of firearms trafficking, and I work alongside several senior ATF agents who have worked extensive firearms trafficking investigations in the past. I have additionally worked multiple investigations involving individuals prohibited from possessing firearms. I know that there are ten categories that can prohibit a person from possessing firearms to include being a previous convicted felon.

4.	I have participated in several firearms trafficking investigations that involved the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these computers, cellular phones, cameras, and other digital storage devices.  In many occasions, this electronic data has provided evidence of the crimes being investigated and corroborated information already known or suspected by law enforcement.

5.	Furthermore, I know from training and experience it is common for drug users, drug dealers, firearms traffickers, and firearms straw purchasers to communicate via cellular phone through a variety of electronic media.  For example, drug dealers often use text (SMS) messaging, phone calls, electronic mail, messaging applications, and/or various social media applications such as Facebook or Twitter, to facilitate their distribution. Your affiant knows from his training that drug traffickers will talk in "street terms" and often code their language to make their actions difficult to detect by law enforcement.

6.       The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7.       Throughout this affidavit, reference will be made to case agents.  Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

8.       Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Teshae K HANNA (dob 09/23/1999) has violated 21 U.S.C. 841(a)(1)(A) and 18 U.S.C. 924(c)(1)(A)(i).

9.       Further, there is probable cause to search the locations described in Attachment A for evidence of these crimes, as described in Attachment B.

### IDENTIFICATION OF THE DEVICES TO BE EXAMINED

10.      The devices to be searched are:

- White Apple iPhone, smart phone on Milwaukee Police Inventory No. 20043874, Item 1; hereinafter referred to as Device A;

- Black Kyocera / Sprint, Model E4277, flip-style cellular phone on Milwaukee Police Inventory No. 20043874, Item 2; hereinafter referred to as Device B;

- Black Kyocera / US Cellular, Model E4510, flip-style cellular phone on Milwaukee Police Inventory No. 20043874, Item 3; hereinafter referred to as Device C;

3

- Black Apple iPhone, Model A1660, smart phone with multiple cracks on the screen on Milwaukee Police Inventory No. 20043874, Item 4; hereinafter referred to as Device D,

11.    Devices A, B, C, D are currently located at the MPD Property Bureau, 2620 W. Wisconsin Ave, Milwaukee, WI, 53233.

12.    The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

13.    Since February of 2021, case agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) in coordination with the Milwaukee Police Department (MPD) and the Federal Bureau of Investigation (FBI), have been investigating identified members of the violent street gang, Wild 100s, aka, Shark Gang, including Teshae HANNA (dob: 09/23/1999) for federal firearms offenses and drug trafficking offenses.

14.    Based upon review of MPD reports, information provided by confidential sources, and review of publicly available social media posts, beginning in approximately July of 2020, members of the Wild 100s, aka Shark Gang, became involved in an ongoing feud with members of the Ghetto Boys Clique (GBC), aka Swindle Gang.  Since that time, multiple homicides, shootings, and instances of illegal possession and transfer of firearms, including the possession of fully automatic firearms, that is, machineguns, have occurred and are suspected to be associated with the ongoing gang feud.

4

15.     In March of 2021, case agents obtained MPD reports regarding HANNA's prior arrests, which revealed that he was arrested on an outstanding bench warrant on November 24, 2020, which led to the recovery of heroin, cocaine, and a firearm.

16.     On November 18, 2020, the Dane County Sheriff's Department entered a bench warrant for the arrest of Teshae HANNA for failing to appear for Dane County Case No. 20CF0928, which charges HANNA with committing an armed robbery. On Tuesday, November 24, 2020, law enforcement officers assigned to the Milwaukee Police Department's SID and Tactical Enforcement Unit (TEU) responded to the address of 1109 N. 18th Street, Apartment No. 910 located in the City and County of Milwaukee to locate a Wanted Subject, Teshae HANNA.

17.     During the investigation, law enforcement officers contacted lessee of the apartment, identified as A.J. at the front door; that while standing at the front door of Apartment No. 910, law enforcement officers observed Teshae HANNA standing in the bedroom wearing only underwear and attempting to get dressed; and that law enforcement officers then entered the apartment and arrested Teshae HANNA.

18.     During the arrest and while in the bedroom, Teshae HANNA specifically requested that officers grab his jacket, shoes (red & white Air Jordan 9 Retro gym shoes), money, and three (3) cellular phones; and that at the direction of Tesha HANNA, officers recovered three (3) cellular phones from the same bedroom, which were identified as the following:

    a.  Black Kyocera / Sprint, Model No. E4277,  flip-style cellular phone;

5

b.  Black Kyocera / US Cellular, Model No. E4510, flip-style cellular phone;

c.  Black Apple iPhone, Model No. A1660, smart phone with multiple cracks on the screen;

19.    Milwaukee Police Officer Jose Viera spoke to the lessee of the Apartment No. 910, A.J. and A.J. provided law enforcement officers with consent to search the apartment. This consent was captured on body worn cameras by MPD officers.

20.    During the search, law enforcement officers located a clear plastic bag on the floor in the bedroom, and upon closer examination of the clear plastic bag revealed it contained a clear plastic bag that contained suspected heroin and a plastic bag that contained suspected cocaine.  Officers also located a silver over black Kahr, Model CW40, .40 caliber, semi-automatic handgun having serial no. FF1315 underneath the mattress in the same bedroom.

21.    Officers additionally located a white Apple iPhone smart phone on the floor in the same bedroom. Your affiant was aware the bedroom were the suspected drugs, firearm, and white Apple iPhone smart phone were located in was the same bedroom Teshae Hanna was arrested in along with where his clothing, money, and three (3) cellular phones were located.

22.    Milwaukee Police Officer Kim Lastrilla has had formal training from the Milwaukee Police Department in the use of the Narco Pouch field tests.  Officer Lastrilla is aware that the Narco Pouch No. 07 is used to test for the presence of cocaine, Narco Pouch No. 11 is used to test for the presence of opiates, and the Narco Pouch No. 33 is

used to test for the presence of heroin & fentanyl. Your affiant is aware Milwaukee Police Officer Kim Lastrilla took custody of the suspected drugs for testing and inventory purposes; that Officer Lastrilla subjected a sample of the suspected heroin to the Nark II 11/33 Field Test and received a positive indicator for opiates and fentanyl with a total weight of 1.0 grams, and Officer Lastrilla subjected a sample of the suspected cocaine base to the Nark II 07 Field Test and received a positive indicator for the presence cocaine base with a total weight of 3.0 grams. Case agents believe based upon training, experience, and the investigation to date, including the weight of the cocaine base and the lack of instruments used to ingest it, that the cocaine base recovered from the bedroom where HANNA was arrested was for street-level distribution, and not personal use.

23. On November 28, 2020, HANNA was charged in Milwaukee County Circuit Court with possession of a firearm-adjudicated delinquent, bail jumping, and possession with intent to distribute cocaine, and possession of narcotic drugs.

24. Case agents are aware that Milwaukee Police Officer Phillip Ferguson took custody of the four (4) cellular phones and placed them on Milwaukee Police Inventory No. 2004387;

   a. Item 1 – White Apple iPhone, smart phone; Device A

   b. Item 2 – Black Kyocera / Sprint, Model E4277, flip-style cellular phone; Device B

7

c. Item 3 – Black Kyocera / US Cellular, Model E4510, flip-style cellular phone; Device C

d. Item 4 – Black Apple iPhone, Model A1660, smart phone with multiple cracks on the screen; Device D

25.     I am aware through training and experience that individuals who traffic and possess firearms and drugs illegally often utilize cell phones to arrange transactions and send pictures of the suspected firearms and narcotics. These devices often contain evidence of the illegal sale and distribution of narcotics and firearms.

26.     Your affiant is aware drug traffickers will often keep and store customer lists on cell phones to include pricing for such narcotics. Drug traffickers will contact consumers whenever they have product available via SMS text, MMS text, or various social media platforms. Customers will then respond to the trafficker to arrange the sale of the narcotics. Your affiant has reviewed multiple examples of these type of communications on the phones of suspected drug traffickers.

27.     The Devices are currently in the lawful possession of MPD.  MPD seized Devices A, B, C, D during the execution of a state arrest warrant and the consent search of the apartment. Therefore, while MPD might already have all necessary authority to examine Devices A, B, C, and D, I seek this additional warrant out of an abundance of caution to be certain that an examination of Devices A, B, C, and D will comply with the Fourth Amendment and other applicable laws.

8

28.     Devices A, B, C, and D are currently in storage at the Milwaukee Police

Department Property Bureau located at 2620 W. Wisconsin Ave, Milwaukee, WI, 53233.

Devices A, B, C, D are inventoried under MPD inventory number 20043874, item 1, 2, 3,

and 4.  In my training and experience, I know that Devices A, B, C, and D have been

stored in a manner in which its contents are, to the extent material to this investigation,

in substantially the same state as they were when the Devices first came into the

possession of the Milwaukee Police Department.

## TECHNICAL TERMS

29.     Based on my training and experience, I use the following technical terms

to convey the following meanings:

   a. *Wireless telephone*:  A wireless telephone (or mobile telephone, or cellular
      telephone) is a handheld wireless device used for voice and data
      communication through radio signals.  These telephones send signals
      through networks of transmitter/receivers, enabling communication with
      other wireless telephones or traditional "land line" telephones.  A wireless
      telephone usually contains a "call log," which records the telephone
      number, date, and time of calls made to and from the phone.  In addition
      to enabling voice communications, wireless telephones offer a broad range
      of capabilities.  These capabilities include: storing names and phone
      numbers in electronic "address books;" sending, receiving, and storing
      text messages and e-mail; taking, sending, receiving, and storing still
      photographs and moving video; storing and playing back audio files;
      storing dates, appointments, and other information on personal calendars;
      and accessing and downloading information from the Internet.  Wireless
      telephones may also include global positioning system ("GPS")
      technology for determining the location of the device.

   b. *Digital camera*:  A digital camera is a camera that records pictures as digital
      picture files, rather than by using photographic film.  Digital cameras use
      a variety of fixed and removable storage media to store their recorded
      images.  Images can usually be retrieved by connecting the camera to a
      computer or by connecting the removable storage medium to a separate

9

reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. *Portable media player*: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. *GPS*: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. *PDA*: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example,

10

PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. *IP Address*: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. *Internet*: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

30.     Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online, I know that each Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

31.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

11

32.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

12

33.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

34.    *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

35.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of Devices A, B, C, and D described in Attachment A to seek the items described in Attachment B.

## ATTACHMENT A

The property to be searched is:

- White Apple iPhone, smart phone on Milwaukee Police Inventory No. 20043874, Item 1; hereinafter referred to as Device A;

- Black Kyocera / Sprint, Model E4277, flip-style cellular phone on Milwaukee Police Inventory No. 20043874, Item 2; hereinafter referred to as Device B;

- Black Kyocera / US Cellular, Model E4510, flip-style cellular phone on Milwaukee Police Inventory No. 20043874, Item 3; hereinafter referred to as Device C; and

- Black Apple iPhone, Model A1660, smart phone with multiple cracks on the screen on Milwaukee Police Inventory No. 20043874, Item 4; hereinafter referred to as Device D

Devices A, B, C, D are currently located at the MPD Property Bureau, 2620 W.

Wisconsin Ave, Milwaukee, WI, 53233.

This warrant authorizes the forensic examination of the Devices for the purpose

of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1.    All records on each Device described in Attachment A that relate to violations of title  21 U.S.C. 841(a)(1)(A) and 18 U.S.C. 924(c)(1)(A)(i) related to Teshae K HANNA (dob 09/23/1999) since January 1, 2020, including:

   a. lists of narcotics dealers and related identifying information;

   b. types, amounts, and prices of drug transactions, as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs or firearms (including names, addresses, phone numbers, or any other identifying information);

   d. any information related to HANNA's purchase, receipt, or possession of firearms;

   e. all bank records, checks, credit card bills, account information, and other financial records relevant to the sale and/or trade of narcotics and firearms;

   f. photos, videos, IP addresses, contact information, contact lists;

   g. text messages, social media messages and content, SMS messages, iMessage data, relating to the sale and/or trade of narcotics and firearms;

   h. electronic mail to include the content of the emails, and associated email addresses, relating to the sale and/or trade of narcotics and firearms;

2.    Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2